**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| FLASHCORE INNOVATIONS LLC,<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendants. | ) | Case No. 2:26-cv-00<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Flashcore Innovations LLC ("Flashcore" or "Plaintiff") for its Complaint for Patent Infringement against Defendants Samsung Electronics Co., Ltd. ("Samsung Electronics") and Samsung Electronics America, Inc. ("Samsung Electronics America") (collectively "Samsung" or "Defendants") alleges as follows:

## THE PARTIES

1. Flashcore is a limited liability company, organized and existing under the laws of the State of Texas, with its principal place of business located at 313 South Washington Avenue, Marshall, Texas 75670.

2. Defendant Samsung Electronics is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 129 Samsung-Ro, Yeongtong-Gu, Suwon-Si, Gyeonggi-Do, 443-742, Republic of Korea. On information and belief, Samsung Electronics does business in Texas, directly or through intermediaries, and offers its products and/or services, including those accused herein of infringement, to customers and potential customers located in Texas, including in the Judicial District of the Eastern District of Texas.

3. Defendant Samsung Electronics America is a corporation organized under the laws of New York, with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660. On information and belief, Samsung Electronics America has corporate offices in the Eastern District of Texas at 1303 East Lookout Drive, Richardson, Texas 75082 and 2800 Technology Drive, Suite 200, Plano, Texas 75074. Samsung Electronics America has publicly indicated that in early 2019, it would be centralizing multiple offices in a new location in the Eastern District of Texas at the Legacy Central office campus, located at 6225 Declaration Drive, Plano, Texas 75023. Samsung Electronics America may be served with process in Texas through its registered agent CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## JURISDICTION

4. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq*. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has specific and personal jurisdiction over each of the Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Upon information and belief, each Defendant has sufficient minimum contacts with the forum because each Defendant transacts substantial business in the State of Texas and in this Judicial District. Further, each Defendant has, directly or through subsidiaries or intermediaries, committed and continues to commit acts of patent infringement in the State of Texas and in this Judicial District, as alleged more particularly below.

6. Venue is proper in this Judicial District pursuant to 28 U.S.C. §§ 1400(b) and 1391(b) and (c) because each Defendant is subject to personal jurisdiction in this Judicial District,

has committed acts of patent infringement in this Judicial District, and is either a foreign company or has a regular and established place of business in this Judicial District. Venue is proper in this Judicial District as to Samsung Electronics, specifically, pursuant to 28 U.S.C. § 1391 because, among other things, Samsung Electronics is not a resident in the United States and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3). Each Defendant, through its own acts and/or through the acts of each other Defendant, makes, uses, sells, and/or offers to sell infringing products within this Judicial District, regularly does and solicits business in this Judicial District, and has the requisite minimum contacts with this Judicial District, such that this venue is a fair and reasonable one. Further, upon information and belief, the Defendants have admitted or not contested proper venue in this Judicial District in other patent infringement actions.

## PATENTS-IN-SUIT

7. On August 22, 2017, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 9,740,657 (the "'657 Patent") entitled "Memory Device for Multiple Processors and Memory System Having the Same." A true and correct copy of the '657 Patent is available at: https://patentimages.storage.googleapis.com/0f/5d/5e/4210cd96fd664c/US9740657.pdf.

8. On February 10, 2015, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,954,644 (the "'644 Patent") entitled "Apparatus and Method for Controlling Memory." A true and correct copy of the '644 Patent is available at: https://patentimages.storage.googleapis.com/ac/fa/cb/5f123a5a4c032c/US8954644.pdf.

9. Flashcore is the sole and exclusive owner of all right, title, and interest in the '657 Patent and the '644 Patent (collectively, the "Patents-in-Suit" or "Asserted Patents") and holds the exclusive right to take all actions necessary to enforce its rights to the Patents-in-Suit, including

the filing of this patent infringement lawsuit. Flashcore also has the right to recover all damages for past, present, and future infringement of the Patents-in-Suit and to seek injunctive relief as appropriate under the law.

10. Flashcore has at all times complied with the marking provisions of 35 U.S.C. § 287 with respect to the Patents-in-Suit. On information and belief, prior assignees and licensees have also complied with the marking provisions of 35 U.S.C. § 287.

## FACTUAL ALLEGATIONS

11. The ’657 Patent generally relates to a high-bandwidth memory architecture that increases parallel memory access by dividing memory banks into independently operable sub-banks and configuring multiple data channels into different widths to process multiple memory requests simultaneously. The technology described in the ’644 Patent was developed by Chan-Ho Lee. For example, the patented technology of the ’657 Patent is infringing by Samsung High Bandwidth Memory (“HBM”), including, but not limited to, the HBM2 “Aquabolt,” HBM2E “Flashbolt,” HBM3 “Icebolt,” HBM3E “Shinebolt,” HBM4, and HBM4E, in all configurations, variations, and capacities (collectively, the “Accused Products”), as well as future versions of Samsung HBM, among other Samsung products.

12. The ’644 Patent generally relates systems and methods for a high-bandwidth memory-control architecture that improves memory throughput by buffering and reordering requests according to their bank and row addresses so that related accesses are processed together while work directed to other banks is performed during otherwise idle memory cycles. The technology described in the ’644 Patent was developed by Chan-Ho Lee. For example, the patented technology of the ’644 Patent is infringed by Samsungs HBM modules, such as the Accused Products, among other Samsung products.

13. Samsung has infringed and is continuing to infringe the Patents-in-Suit by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or importing, products including, but not limited, Samsung's HBM modules, including the Accused Products, among other Samsung products.

**COUNT I**
**(Infringement of the '657 Patent)**

14. Paragraphs 1 through 13 are incorporated by reference as if fully set forth herein.

15. Flashcore has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the '657 Patent.

16. Defendants have and continue to directly infringe the '657 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each and every limitation of one or more claims of the '657 Patent. Such infringing products include Samsung HBM modules, such as the Samsung HBM3, among other Samsung products.

17. For example, Defendants have and continue to directly infringe at least Claim 1 of the '657 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include Samsung HBM modules, such as the Samsung HBM3. The Samsung HBM3 is exemplary of how the Accused Products infringe the '657 Patent.

18. The Samsung HBM3 comprises a memory device for multiple processors, the memory device comprising: a command and control signal port receiving a command and control signal from a memory controller (e.g., Samsung HBM3 is high-bandwidth DRAM used by GPUs and AI/HPC processors that receives command and control signals from an HBM memory controller).

19. The Samsung HBM3 comprises an address port receiving an address signal from

the memory controller (e.g., Samsung HBM3 receives row, column, and bank address information from the memory controller).

20. The Samsung HBM3 comprises a data port comprising a plurality of data channels being independently driven to simultaneously process a plurality of memory access requests to the memory controller (e.g., Samsung HBM3 uses multiple independent channels and pseudo-channels to support parallel memory accesses).

21. The Samsung HBM3 comprises a mode register changing a number of the plurality of data channels being independently driven by combining or dividing the plurality of data channels (e.g., Samsung's HBM technology includes mode-register-controlled splitting of HBM channels into multiple narrower channels).

22. The Samsung HBM3 comprises a plurality of memory banks, wherein each of the plurality of memory banks is divided into a plurality of sub-banks to simultaneously perform operations according to the plurality of memory access requests when the plurality of memory access requests are sequentially transmitted through the command and control signal port and the address port (e.g., Samsung HBM divides memory banks into smaller sub-bank resources that support parallel operation), wherein each of the plurality of sub-banks is divided based on a bit line (e.g., Samsung HBM DRAM arrays physically subdivided along bit-line and sense-amplifier structures), wherein the mode register changes at least a part of data widths of the plurality of data channels to be different from one another by combining or dividing the plurality of data channels (e.g., on information and belief, Samsung HBM use mode-register-controlled configurations such as x64+x32+x32).

23. For example, on information and belief, Samsung's HBM technology relates to techniques for organizing and controlling the multiple memory channels and memory resources

within an HBM device to increase available memory bandwidth. Further, Samsung HBM uses a multi-channel memory architecture in which memory resources are subdivided and channels are configured to permit parallel access, which supports the configurable, multi-channel and sub-bank memory architecture claimed by the ’657 patent.

24. On information and belief, Defendants’ direct infringement of the ’657 Patent includes, but is not limited to, testing, development, troubleshooting, and other use in the United States. Defendants also use the Accused Products at tradeshows in the United States to promote the sale of the Accused Products. For example, in March 2024, Samsung Electronics demonstrated its HBM technology in the United States at MemCon 2024 in Santa Clara, California, where Samsung showcased its HBM technology and provided attendees an opportunity to demo its HBM3E 12H chip.[1]

25. Defendants have and continue to indirectly infringe one or more claims of the ’657 Patent by knowingly and intentionally inducing others, including Samsung’s customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

26. Defendants, with knowledge[2] that these products, or the use thereof, infringe the ’657 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the ’657 Patent by

---

[1] *See* https://semiconductor.samsung.com/news-events/news/samsung-demonstrates-new-cxl-capabilities-and-introduces-new-memory-module-for-scalable-composable-disaggregated-infrastructure-at-memcon-2024/.

[2] Samsung cited directly to the ’657 Patent in connection with its own foreign patent application, KR1020160160785A, which was published as KR20180061557A on June 18, 2018, and issued as KR102680418B1 on July 3, 2024. Therefore, Samsung had knowledge of the ’657 no later than June 18, 2018.

providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, thereby remaining willfully blind to the '657 Patent at least as early as the issuance of the '657 Patent.

27. Defendants have induced infringement by others, including end users, with the intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the '657 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants' website, product literature and packaging, and other publications, including any of Defendants' materials cited in this Complaint.

28. On information and belief, Defendants directly prepare and/or assist in the preparation of, and provide customers and end-users with, information and documents for their specific products. On information and belief, Defendants' product literature and other product information documents are prepared by or under the direction of Defendants to instruct customers and end-users on how to use the Accused Products in an infringing manner.

29. Because of Defendants' inducement, Defendants' customers and end-users use the Accused Products in a way Defendants intend and directly infringe the '657 Patent. Defendants perform these affirmative acts with knowledge of the '657 Patent and with the intent, or willful blindness, that the induced acts directly infringe the '657 Patent.

30. Defendants have indirectly infringed and continue to indirectly infringe one or more

claims of the ’657 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants’ affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others’ use and manufacture of the Accused Products such that the ’657 Patent is directly infringed by others. The accused components within the Accused Products are material to the invention of the ’657 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the ’657 Patent. Defendants perform these affirmative acts with knowledge of the ’657 Patent and with intent, or willful blindness, that they cause the direct infringement of the ’657 Patent.

31. Flashcore has suffered damages as a result of Defendants’ direct and indirect infringement of the ’657 Patent in an amount to be proven at trial.

32. Flashcore has suffered, and will continue to suffer, irreparable harm as a result of Defendants’ infringement of the ’657 Patent, for which there is no adequate remedy at law, unless Defendants’ infringement is enjoined by this Court.

**COUNT II**
**(Infringement of the ’644 Patent)**

33. Paragraphs 1 through 13 are incorporated by reference as if fully set forth herein.

34. Flashcore has not licensed or otherwise authorized Defendants to make, use, offer for sale, sell, or import any products that embody the inventions of the ’644 Patent.

35. Defendants have and continue to directly infringe the ’644 Patent, either literally or under the doctrine of equivalents, without authority and in violation of 35 U.S.C. § 271, by making, using, offering to sell, selling, and/or importing into the United States products that satisfy each

and every limitation of one or more claims of the ’644 Patent. Such infringing products include Samsung HBM modules, such as the Samsung HBM3, among other Samsung products.

36. For example, Defendants have and continue to directly infringe at least Claim 6 of the ’644 Patent by making, using, offering to sell, selling, and/or importing into the United States products that include the Samsung HBM3. The Samsung HBM3 is exemplary of how the Accused Products infringe the ’644 Patent.

37. The Samsung HBM3 performs a method of controlling memory, the method being performed by an apparatus for controlling memory, which adaptively determines an order of execution of a plurality of memory access requests, the method comprising the steps of: (a) reading, by a memory access request control unit, a plurality of memory access requests from a memory access request buffer unit in order (e.g., Samsung HBM3-capable controllers queue multiple memory requests and dynamically schedule their execution based on bank state and store multiple requests in a memory request queue and process them through a command scheduler).

38. The Samsung HBM3 performs the step of (b) determining, by the memory access request control unit, whether a first bank buffer unit is not full based on first bank information corresponding to a memory address extracted from an n-th memory access request (e.g., Samsung controller architectures map each request to a bank-specific queue based on the bank identified by its memory address).

39. The Samsung HBM3 performs the step of (c) if the first bank buffer unit is not full, transferring the n-th memory access request to the first bank buffer unit, and, if the first bank buffer unit is full, reading a memory access request, bank information of a memory address of which is a second bank, among memory access requests coming after the n-th memory access request (e.g., Samsung controllers distribute requests among separate bank queues and schedule requests

associated with different banks out of their original order).

40. The Samsung HBM3 performs the step of (d) determining whether a second bank buffer unit is not full, and, if the second bank buffer unit is not full, transferring the memory access request, bank information of a memory address of which is the second bank, to the second bank buffer unit (e.g., Samsung uses separate queues corresponding to respective memory banks, allowing requests to be directed to the appropriate bank queue).

41. The Samsung HBM3 performs the step of (e) storing order in which the memory access requests are transferred to the buffer units for respective banks, thereby sequentially transferring commands of a bank control unit to memory (e.g., Samsung bank schedulers determine request-processing order and a channel scheduler selects and transmits the resulting commands to memory), wherein the memory access buffer unit determines and stores memory access request order so that the plurality of memory access requests is processed in order based on input order of the plurality of memory access requests and bank and row information extracted from memory addresses of the memory access requests (e.g., Samsung controllers derive bank and row addresses from queued memory requests and reorder commands using bank-state information), and modifies the memory access request order so that memory access requests attempting to access a same row of same bank are successively processed (e.g., Samsung bank schedulers use an open-page policy that considers row hits, favoring requests to the already-open row of the same bank).

42. For example, on information and belief, Samsung HBM contains numerous separately addressable memory resources, including channels, banks, and subdivisions of those banks, whose operation requires coordinating multiple memory accesses to increase bandwidth, consistent with the type of memory-access control and scheduling addressed by the ’644 patent.

43. On information and belief, Defendants' direct infringement of the '644 Patent includes, but is not limited to, testing, development, troubleshooting, and other use in the United States. Defendants also use the Accused Products at tradeshows in the United States to promote the sale of the Accused Products. For example, in March 2024, Samsung Electronics demonstrated their HBM technology in the United States at MemCon 2024 in Santa Clara, California, where Samsung showcased its HBM technology and provided attendees an opportunity to demo their HBM3E 12H chip.[3]

44. Defendants have and continue to indirectly infringe one or more claims of the '644 Patent by knowingly and intentionally inducing others, including Samsung's customers and end-users, to directly infringe, either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing into the United States products that include infringing technology.

45. Defendants, with knowledge that these products, or the use thereof, infringe the '644 Patent at least as of the date of this Complaint, knowingly and intentionally induced, and continue to knowingly and intentionally induce, direct infringement of the '644 Patent by providing these products to end users for use in an infringing manner. Alternatively, on information and belief, Defendants have adopted a policy of not reviewing the patents of others, and instructing their officers, agents, and employees to not review the patents of others, including specifically those related to Defendants' specific industry, thereby remaining willfully blind to the '644 least as early as the issuance of the '644 Patent.

46. Defendants have induced infringement by others, including end users, with the

[3] *See* https://semiconductor.samsung.com/news-events/news/samsung-demonstrates-new-cxl-capabilities-and-introduces-new-memory-module-for-scalable-composable-disaggregated-infrastructure-at-memcon-2024/.

intent to cause infringing acts by others or, in the alternative, with the belief that there was a high probability that others, including end users, infringe the ’644 Patent, but while remaining willfully blind to the infringement. Defendants have and continue to induce infringement by their customers and end-users by supplying them with instructions on how to operate the infringing technology in an infringing manner, while also making publicly available information on the infringing technology via Defendants’ website, product literature and packaging, and other publications, including any of Defendants’ materials cited in this Complaint.

47. On information and belief, Defendants directly prepare and/or assist in the preparation of, and provide customers and end-users with, information and documents for their specific products. On information and belief, Defendants’ product literature and other product information documents are prepared by or under the direction of Defendants to instruct customers and end-users on how to use the Accused Products in an infringing manner.

48. Because of Defendants’ inducement, Defendants’ customers and end-users use the Accused Products in a way Defendants intend and directly infringe the ’644 Patent. Defendants perform these affirmative acts with knowledge of the ’644 Patent and with the intent, or willful blindness, that the induced acts directly infringe the ’644 Patent.

49. Defendants have indirectly infringed and continue to indirectly infringe one or more claims of the ’644 Patent, as provided by 35 U.S.C. § 271(c), by contributing to direct infringement by others, such as customers and end-users, in this District and elsewhere in the United States. Defendants’ affirmative acts of selling and offering to sell the Accused Products in this District and elsewhere in the United States and causing the Accused Products to be manufactured, used, sold, and offered for sale contributes to others’ use and manufacture of the Accused Products such that the ’644 Patent is directly infringed by others. The accused components within the Accused

Products are material to the invention of the ’644 Patent, are not staple articles or commodities of commerce, have no substantial non-infringing uses, and are known by Defendants to be especially made or adapted for use in the infringement of the ’644 Patent. The accused components include, but are not limited to, components necessary for the operation of Defendants infringing systems, including, but not limited to, the Samsung HBM modules. Defendants perform these affirmative acts with knowledge of the ’644 Patent and with intent, or willful blindness, that they cause the direct infringement of the ’644 Patent.

50. Flashcore has suffered damages as a result of Defendants’ direct and indirect infringement of the ’644 Patent in an amount to be proven at trial.

51. Flashcore has suffered, and will continue to suffer, irreparable harm as a result of Defendants’ infringement of the ’644 Patent, for which there is no adequate remedy at law, unless Defendants’ infringement is enjoined by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Flashcore prays for relief against Defendants as follows:

a. Entry of judgment declaring that Defendants have directly infringed one or more claims of each of the Patents-in-Suit;

b. An order pursuant to 35 U.S.C. § 283 permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert or participation with them, from further acts of infringement of one or more of the Patents-in-Suit;

c. An order awarding damages sufficient to compensate Flashcore for Defendants’ infringement of the Patents-in-Suit, but in no event less than a reasonable royalty, together with

interest and costs;

d. Entry of judgment declaring that this case is exceptional and awarding Flashcore its costs and reasonable attorney fees under 35 U.S.C. § 285; and

e. Such other and further relief as the Court deems just and proper.

Dated: September 14, 2026

Respectfully submitted,

*/s/ Vincent J. Rubino, III*
Alfred R. Fabricant
NY Bar No. 2219392
Email: ffabricant@frlip.com
Peter Lambrianakos
NY Bar No. 2894392
Email: plambrianakos@frlip.com
Vincent J. Rubino, III
NY Bar No. 4557435
Email: vrubino@frlip.com
**Fabricant, Rubino & Lambrianakos LLP**
411 Theodore Fremd Ave., Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

***ATTORNEYS FOR PLAINTIFF FLASHCORE INNOVATIONS LLC***